IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Benjamin Butch Johnson,** ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:19cv01080 (LO/MSN) |
| ) | |
| **Harold W. Clarke,** ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Benjamin Butch Johnson, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his February 22, 2016 conviction in the Circuit Court of the City of Chesapeake for first-degree murder. Respondent has filed a Motion to Dismiss, with a supporting brief. Johnson has been notified of his opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), but has declined to respond. Accordingly, this matter is now ripe for disposition. For the reasons that follow, respondent's Motion to Dismiss must be granted, and the petition will be dismissed.

### I. Procedural History

On August 26 through 31, 2015, Johnson was tried by a jury and found guilty of first-degree murder. The jury fixed his sentence at life in prison and a fine of $100,000. Johnson represented himself with stand-by counsel at trial. On February 22, 2016, the Chesapeake Circuit Court sentenced Johnson to life in prison. (Case No. CR11-2472). The Court of Appeals of Virginia denied Johnson's petition for appeal on May 16, 2017, and his petition for rehearing on July 21, 2017. Johnson did not appeal to the Supreme Court of Virginia. The Court of Appeals of Virginia summarized the trial evidence as follows:

Marcia Johnson and appellant were married. Mariah Parish, Mrs. Johnson's daughter, testified she observed appellant stab her mother multiple times in their shared residence. Parish attempted to get appellant off her mother, and in doing so, she pulled appellant's pants off. Parish and Mrs. Johnson ran out of the home. One witness, Clarence Moore, saw the two women and stopped to assist them. He testified they said someone was trying to kill Mrs. Johnson. Moore was going to have them get in his car when the women saw appellant and they started to run. Moore recounted that as they were running, appellant ran over Mrs. Johnson with a car. Moore called 911. Moore identified his voice on a 911 recording and stated that it accurately memorialized his call to 911. Moore testified appellant got out of the car, straddled Mrs. Johnson, and stabbed her numerous times, leaving the knife in her head. Moore also recalled a dog getting out of appellant's car when appellant exited the car, and that a neighbor took control of the dog. Moore described appellant as cussing and noted he was naked. Moore told appellant that he had a gun and to stop attacking Mrs. Johnson. Appellant eventually got up and walked away from the scene.

Another witness, Joshua Ward, testified he was also driving by the scene when he noticed what looked like a car driving into a field. He thought there was a motor vehicle accident, when he noticed there was a "commotion" that looked like a beating. Ward called 911, stopped at the scene, and he recounted that he observed appellant stabbing Mrs. Johnson. Ward recalled that Parish was screaming, "He's killing her." He saw the dog circling and barking, but he did not know where the dog came from. He heard someone at the scene say he had a gun. Ward testified appellant repeatedly stabbed Mrs. Johnson until the knife broke and appellant walked calmly away.

Two of the Johnsons' neighbors, Zachary and Robert Williams, also testified they observed appellant attack Mrs. Johnson. Zachary testified he heard screaming and he looked outside his home. He saw Parish and Mrs. Johnson running. He also saw their dog running after them. He thought the dog was loose so he went to his vehicle to get a leash. He saw a car drive into the field and run over Mrs. Johnson with the car. Zachary observed appellant get out of the car and go to Mrs. Johnson. At first, he thought appellant was punching Mrs. Johnson, but he later realized appellant was stabbing her when Robert drove his truck toward the scene and illuminated the area with his headlights. Zachary testified appellant kept stabbing Mrs. Johnson in the chest, neck, and upper torso area until the knife's blade was bent. Appellant then told Robert, "Stay out of it," and he walked away. Zachary noted appellant was naked. Zachary stated that, with Robert's help, he leashed the dog and took him to their residence until an officer took possession of the dog.

Robert Williams testified he returned home and saw Zachary running and realized there was a fight occurring. He maneuvered his truck so that the headlights illuminated the people. Robert testified he saw appellant punching his wife. He

2

heard someone at the scene state that they had a gun but did not want to shoot. Robert grabbed his gun and walked to the scene where he saw appellant about to stab his wife, but the knife was bent. Robert recalled appellant looked at him and said, "Don't try to stop me, Rob," and then walked away. Robert said he was able to get the dog and leash him and he took the dog to his home.

An emergency responder testified that he received a dispatch for a motor vehicle accident, but when he arrived at the scene, police told him there was also an assault. He stated he did not fully recall the specific injuries Mrs. Johnson sustained, but that they were severe and that she had a large open wound in her pelvic area and lacerations to her face. The EMT did not recall her nose "hanging off," though the EMT report indicated a "major avulsion to the face and nose." Mrs. Johnson went into cardiac arrest on the way to the hospital. Dr. Lee testified he was the lead doctor in the trauma unit of the hospital when Mrs. Johnson arrived. She arrived with no pulse and they continued chest compressions, but they could not resuscitate her. He recalled she had multiple stab wounds and noted, "a portion of her face had been removed with a sharp object."

Dr. Kinnison, the medical examiner, testified the pictures showing Mrs. Johnson's nose demonstrated the sharp margins of the cut and the flap of skin. She concluded Mrs. Johnson suffered several stab wounds caused by a sharp edged object or weapon. Dr. Kinnison identified several defensive wounds on Mrs. Johnson's hands and forearms. She also described a large gaping wound from the groin to the perineum which contained bone fragments that was caused by tearing and blunt force trauma. The bone fragments were from her broken pelvis. Dr. Kinnison concluded the cause of death was multiple sharp and blunt force injuries to the torso, with the blunt force injuries being the more significant injuries. Dr. Kinnison opined that Mrs. Johnson's crushed pelvis was consistent with being struck by a car. Dr. Kinnison did not test the recovered knife and did not express an opinion whether the knife admitted at trial was the sharp edged object that produced the multiple stab wounds on Mrs. Johnson. Dr. Kinnison stated there was no possibility that a dog could cause the injuries Mrs. Johnson sustained, particularly as described by appellant.

Johnson v. Commonwealth, Record No. 0440-16-1, at 2-5 (Va. Ct. App. May 16, 2017).

Johnson filed a petition for writ of habeas corpus in the Chesapeake Circuit Court on July 17, 2018 (Cir. Ct. R. at 51), that the circuit court dismissed on February 21, 2019 (Id. at 205), rendering his petition for appeal due on or before May 22, 2019. See Va. S. Ct. R. 5:17(a)(1). Johnson filed a notice of appeal on March 8, 2019 and executed the petition for appeal on May

3

23, 2019, which was after the deadline for filing had passed. (Habeas Appeal, Record No. 190702 at 20) (hereinafter "Hab. at ___"). On August 2, 2019, the Supreme Court of Virginia dismissed his petition for appeal for appeal finding it had not been timely filed. (Hab. at 22) (citing Va. Sup. Ct. R. 5:17(a)(1)).

Petitioner filed the current § 2254 petition on August 7, 2019, and raises the following claims:

1. Petitioner was denied his right to effective assistance of counsel because his stand-by counsel, who "reeked of alcohol," told petitioner during trial that his witnesses were there, and petitioner told counsel "that the prosecution still had the case." However, later on in the trial stand-by counsel told the petitioner that the witnesses had been subpoenaed but that they had not shown up, and that he had never told petitioner that the witnesses were present. [Dkt. No. 1. at 5]. Stand-by counsel, without petitioner present, suggested that the audio portion of a video that showed a portion of the activity of the petitioner, his wife, and the daughter from that evening the prosecution intended to introduce be edited out over prosecutor's concern that her voice was on the audio, which prohibited petitioner from being able to object to the admission of the video because it had been tampered with via audio elimination. [Id. at 17].

2. Petitioner was deprived of his right to effective assistance of appellate counsel because appellate counsel filed a brief seeking to withdraw under Anders v. California on the ground that there were no meritorious issues to appeal. [Id. at 7, 18].

3. The prosecutor violated the petitioner's due process rights and committed a Brady violation by manipulating operational features on the laptop while playing the videotape. [Id. at 8]. The prosecutor misled the court when she told them she could not stop, slow down, pause, re-wind or show still photos on the video, which was two minutes and twenty-three seconds long. When petitioner played the video after trial on prison equipment he was able to "easily" stop and slow down the video. [Id. at 19].

4. The prosecution altered the 911 transcript provided in discovery (dated March 6, 2015) and did not disclose to the court the original 911 transcript (dated November 15, 2010) of the pit-bull attack. [Id. at 10]. If petitioner had the original transcripts before trial, he could have impeached the prosecution's witnesses and made casts of the dog's paws to prove it was a dog attack. [Id. at 21-22].

4

5. Petitioner's due process rights were violated with regard to the dog's whereabouts. [Id. at 23].

6. The trial court allowed the medical examiner to opine on matters not in the autopsy report and testify about a knife and car that the medical examiner had never seen before or forensic proof to substantiate the testimony and testified to photos of the victim's injuries. The improper testimony from the medical examiner denied the petitioner due process and "tipped the deliberation of the jury." Id. at 24, 25].

7. The trial court would not allow the petitioner to give copies of the autopsy report, including the drawing that indicated the location of the victim's injuries, to the jury or allow him to use the easel. The trial judge did allow the petitioner to use "a blurry overhead projector," but would not allow "him to pass around his favorite photos." [Id. at 26].

8. Petitioner was denied due process of law because the trial court allowed Doctor Lee, who had pronounced the victim deceased, to testify without a report to coincide with the death certificate or condition report and to testify about an opin[ion] that was not in the report. [Id. 1 at 27].

## II. Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner has a one-year period in which to file a federal habeas corpus petition. This period generally begins on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" and excludes "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(1)(A), (d)(2).

Johnson's conviction became final on August 20, 2017, thirty days after the Court of Appeals of Virginia denied his petition for appeal because he did not appeal to the Supreme Court of Virginia.[1] See Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). Unless

---

[1] In calculating when direct review ended, the 90-day period for filing an application for writ of certiorari with the United States Supreme Court is not included when a habeas petitioner does not properly maintain a direct appeal through the highest available state court. See Butler v. Cain, 533 F.3d 314, 316-19 (5th Cir. 2008); Riddle v. Kemna, 523 F.3d 850, 852-56 (8th Cir.

5

tolled, the federal statute of limitations would have lapsed on August 20, 2018.

The federal statute of limitations was tolled on the date Johnson filed his state habeas petition, July 17, 2018.[2] (Cir. Ct. R. at 51). Between August 20, 2017 and July 17, 2018, 330 days had passed, which left Johnson 35 days to file under the one-year limit provided by the federal statute of limitations after his state habeas proceeding ended. The state habeas petition was dismissed on February 21, 2019. (Cir. Ct. R. at 205). The Supreme Court of Virginia dismissed Johnson's petition for appeal on August 2, 2019, on the ground that he had not perfected the appeal "in the manner provided by law because [Johnson had] failed to timely file the petition for appeal." [Dkt. No. 11-9] (citing Va. Sup. Ct. R. 5:17(a)(1)).[3]

The federal statute of limitations is tolled only during the pendency of "properly filed" state habeas proceedings. Because Johnson failed to timely file the petition for appeal, his petition for appeal to the Supreme Court of Virginia was not "properly filed" and the federal statute of limitations was not tolled while he pursued the appeal. See Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005) ("[T]ime limits, no matter their form, are 'filing' conditions. Because the state court rejected petitioner's [] petition as untimely, it was not 'properly filed' and he is not entitled to statutory tolling under § 2244(d)(2)."). Since the petition for appeal was not properly filed, the federal statute of limitations began to run after the dismissal of his state habeas petition

---

2008); Pugh v. Smith, 465 F.3d 1295, 1297-1300 (11th Cir. 2006). However, even if Johnson was afforded the 90 days for filing a petition for certiorari to the United States Supreme Court, his federal habeas petition is untimely.

[2] Johnson's state habeas petition was notarized on July 17, 2018, the earliest date he could have turned given it to state officials for mailing. See Houston v. Lack, 487 U.S. 266, 276 (1988).

[3] The Fourth Circuit has held that Rule 5:17(a)(1) is an adequate and independent state ground barring federal habeas review. See O'Dell v. Netherland, 95 F.3d 1214, 1244 (4th Cir. 1996); see also Spencer v. Murray, 5 F.3d 758, 761-72 (4th Cir. 1993) (dismissing claims from federal review under Rule 5:17(a)(1)).

6

on February 21, 2019. See Christian v. Baskerville, 232 F. Supp.2d 605, 607 (E.D. Va.), appeal dismissed, 47 Fed. App'x 200 (4th Cir. 2001); see also Escalante v. Watson, 488 Fed. App'x 694, 697-98 (4th Cir. 2012) (relying on Christian's logic to hold that petitions failing to comply with Va. Sup. Ct. R. 5:17(c) do not toll the statute of limitations under § 2244(d)(2)); Rodgers v. Angelone, 113 F. Supp. 2d 922, 930 (E.D. Va. 2000) ("under Virginia's rules, an 'application' is only 'properly filed' on the date that the prisoner, within the time limit, submits his petition for appeal to prison officials to be mailed"), appeal dismissed, 5 Fed. App'x 335 (4th Cir. 2001). The federal statute of limitations therefore expired on March 28, 2019, 35 days after the dismissal of his state habeas petition by the state circuit court. Johnson filed his federal petition on August 7, 2019 [Dkt. No. 1 at 15],[4] which was 101 days past the expiration of the statute of limitations. Accordingly, the petition is untimely under § 2244(d), unless petitioner can establish that the statute of limitations does not apply or should otherwise be tolled. See Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002).

To qualify for equitable tolling, a petitioner must demonstrate that (1) he had been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. Pace, 544 U.S. at 418. A petitioner asserting equitable tolling "bears a strong burden to show specific facts" that demonstrate fulfillment of both elements of the test. Yang v. Archuleta, 525 F.3d 925, 928 (10th Cir. 2008) (quoting Brown v. Barrow, 512 F.3d 12304, 1307 (11th Cir. 2008)). The petitioner generally is obliged to specify the steps he took in diligently pursuing his federal claim. Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001). In addition, the petitioner must "demonstrate a causal relationship between the extraordinary

---

[4] Johnson signed his petition on August 7, 2019. See Houston, 487 U.S. at 276.

7

circumstance on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000).

Petitioner has not asserted he is entitled to equitable tolling, and no impediment is apparent in the record. Johnson left the portion of his federal habeas petition regarding the timeliness of his federal habeas petition blank [Dkt. No. 1 at 13-14] but noted in his federal habeas petition that he had failed to file an appeal to the Supreme Court of Virginia on direct appeal because another inmate had given him "erroneous advice as to the filing deadline."[5] [Dkt. No. 1 at 2]. Regarding the appeal of the dismissal of his state habeas petition, Johnson simply notes it was either "denied untimely" or "denied as untimely" in his federal habeas petition. [Dkt. No. 1 at 6, 8, 9, 11]. Despite having the opportunity to address respondent's assertion that his petition is time-barred, Johnson has not alleged either the existence of "extraordinary circumstances" that prevented his timely filing the petition or that he diligently pursued relief. Indeed, neither a litigant's pro se status nor ignorance of the law normally warrants equitable tolling. See Wakefield v. RRB, 131 F.3d 967, 970 (11th Cir. 1997) (neither a litigant's pro se status nor ignorance of the law normally warrants equitable tolling). Moreover, petitioner has not asserted that he diligently pursued relief. See Diaz v. Sec'y for

---

[5] Assistance from a fellow inmate or other non-lawyers does not constitute grounds for the equitable tolling of the statute of limitations. See United States v. Cicero, 214 F.3d 199, 204-05 (D.C. Cir. 2000); Paige v. United States, 171 F.3d 559, 561 (8th Cir. 1999) (equitable tolling not available to prisoner whose petition, prepared by an inmate in a different prison, was delayed in mail); Henderson v. Johnson, 1 F. Supp. 2d 650, 655 (N.D. Tex. 1998) (equitable tolling denied to prisoner to whom fellow inmate had fraudulently represented that he had timely filed petition for him).

8

Dep't of Corr., 362 F.3d 698, 702 (11th Cir. 2004) ("equitable tolling is available only if a petitioner establishes both extraordinary circumstances and due diligence").[6] Johnson's habeas petition is untimely and will be dismissed.

## VI. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 9] is granted, and this petition is dismissed with prejudice. An appropriate Order and judgment shall issue.[7]

Entered this 6th day of August 2020.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

---

[6] Petitioner's claims are also not reviewable under the limited exception outlined by the United States Supreme Court in Martinez v. Ryan, 566 U.S. 1, 9 (2012), to allow review of certain ineffective assistance of counsel claims. Martinez does not excuse otherwise untimely federal habeas petitions or provide tolling under the AEDPA. See, e.g., Neal v. Clarke, No. 1:17cv278, 2019 U.S. Dist. LEXIS 722, n.5 (E.D. Va. Jan. 2, 2019) (the Martinez test does not overcome the running of the statute of limitations); see also Arthur v. Thomas, 739 F.3d 611, 631 (11th Cir. 2014) (Martinez does not save an untimely habeas petition).

[7] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Johnson fails to meet this standard.